IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

Y.A.P.A.,                          *

    Petitioner,                    *

vs.                                *

                                    CASE NO. 4:25-cv-144 (CDL)

DONALD J. TRUMP, *et al.*,          *

    Respondents.                   *

_____

O R D E R

INTRODUCTION

Federal courts have been thrust into the middle of the controversy surrounding United States immigration policy. Many of the cases now being filed on behalf of persons who are not citizens of the United States arise from attempts by the current President to reverse the immigration policies of our immediate preceding President. Given the strong policy differences between the two administrations and the public interest in these issues, it is difficult sometimes to separate the policy issues from the legal ones in these cases. But the courts' job (solemn duty) is to carefully make that discernment and base decisions on a good faith interpretation of the law and not immigration public policy considerations.

The Petitioner in the present case is a noncitizen from Venezuela currently detained at the Stewart Detention Center,

which is located in the Middle District of Georgia.  U.S.
Immigration and Customs Enforcement ("ICE") arrested him claiming
that he is in the United States illegally.  His removal is
currently being processed pursuant to Section 240 of the
Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1229a.
Petitioner is concerned that he will be designated an "alien enemy"
under the Alien Enemies Act, 50 U.S.C. §§ 21 to 24, placed on an
expedited removal track, transferred to the Center for Terrorism
Confinement ("CECOT") in El Salvador without a meaningful
opportunity to contest the alien enemy designation, and upon
transfer have no legal recourse to correct what he deems to be an
unlawful transfer.  Petitioner filed this petition for habeas
corpus to preemptively prevent his transfer to CECOT.  Presently
pending for the Court's immediate consideration is Petitioner's
motion for temporary restraining order, which the Court converts
to a request for preliminary injunction now that the Respondents
have had an opportunity to respond.  In his motion for emergency
injunctive relief, Petitioner seeks to prevent his transfer
outside the jurisdiction of this Court until his petition for
habeas corpus is decided and he can contest any alien enemy
designation.  For the reasons explained in the remainder of this
Order, Petitioner's motion (ECF No. 4) is granted in part.[1]

---

[1] The Court also grants Petitioner's motion to proceed under a pseudonym
(ECF No. 5), which the Government did not substantively oppose.  The

DISCUSSION

The President issued a proclamation supported by a State Department declaration that the Tren de Aragua gang ("TdA") is a "Foreign Terrorist Organization." Presidential Proclamation No. 10903, 90 Fed. Reg. 13033-34 (Mar. 14, 2025); State Dep't Pub. Notice 12672, 90 Fed. Reg. 10030-03 (Feb. 20, 2025). The President has broad discretion to designate certain noncitizens present in the United States as "alien enemies" and have them detained and removed from the United States. 50 U.S.C. § 21. The removal process for alien enemies is expedited compared to removal under Section 240 of the INA. Due to the nature of the removals, Congress has largely left it to the Executive Branch to determine the specific removal procedures for alien enemies. Notwithstanding this substantial deference to the Executive Branch, its discretion is not unfettered. As recently announced by the Supreme Court, before someone can be removed from the country because of their "alien enemy" status, they must be given an opportunity for meaningful judicial review in federal court. That review may be obtained by filing a petition for habeas corpus in the district where the detainee is physically located. *Trump v. J.G.G.*, 145 S.

---

Court finds that under the circumstances of this case, Petitioner's privacy concerns outweigh the general requirement of disclosure because Petitioner is challenging governmental activity, this action discloses sensitive personal information about his history and immigration status, and Petitioner's anonymity in the court papers does not pose a threat of fundamental fairness to Respondents.

Ct. 1003, 1006 (2025) (per curiam) ("AEA detainees must receive notice after [April 7, 2025] that they are subject to removal under the Act. The notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs.").

The question presented by the pending motion for emergency injunctive relief is whether the Court should order that the Petitioner shall not be transferred from the Middle District of Georgia while he is provided with an opportunity through a habeas petition to contest what he believes to be his likely designation as an alien enemy. Respondents argue preliminarily that Petitioner's motion must be denied based upon a lack of constitutional standing given that Petitioner has not yet been designated an alien enemy. They next argue that Petitioner has not satisfied his burden for obtaining preliminary injunctive relief because (1) he is not likely to succeed on the merits of his claim; (2) he will not suffer irreparable harm by the denial of his motion; (3) Respondents will suffer substantial harm by the Court's interference with its constitutional and statutory duties related to immigration policy; and (4) the public interest is not served by the granting of the relief Petitioner seeks. *See Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1277 (11th Cir. 2024) ("A preliminary injunction is appropriate only when the moving party can show that: (1) 'it has a substantial likelihood

of success on the merits'; (2) it will suffer 'irreparable injury' unless an 'injunction issues'; (3) this 'threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party'; and (4) 'the injunction would not be adverse to the public interest.'") (quoting *Otto v. City of Boca Raton*, 981 F.3d 854, 860 (11th Cir. 2020)).

### *Standing*

The Supreme Court's decision only a few days ago answers the standing issue. It granted a temporary injunction to two Venezuelan immigration detainees who sought injunctive relief against summary removal from the United States under the AEA. *A.A.R.P. v. Trump*, No. 24A1007, 2025 WL 1417281, at *3 (U.S. May 16, 2025) (per curiam). In *A.A.R.P.*, the two named applicants asserted that they were "at imminent risk of being classified as alien enemies and removed from the United States," though they had not "received any formal notice of removal under the AEA." *Id.*; *accord* Am. Pet. ¶¶ 20-21, ECF No. 38 in 1:25-cv-00059-H (N.D. Tex.) (alleging that the petitioners in *A.A.R.P.* were in grave danger of being classified as alien enemies because ICE accused them of being affiliated with TdA based on their tattoos and social media posts). This ruling was issued after Respondents filed their response brief in this case; but if they persisted in their standing argument notwithstanding the Supreme Court's recent ruling, the Court would find it unpersuasive.

Like the Petitioners in *A.A.R.P.*, Petitioner here is a Venezuelan national who is detained in a U.S. detention center. He believes he is at risk of being classified as an alien enemy in part because ICE represented to an immigration court that Petitioner is a known associate of TdA. Pet. ¶ 21, ECF No. 1; *accord* Mot. for TRO Ex. 11, Pet'r's ICE Form I-213 (stating that Homeland Security Investigations targeted Petitioner "for being a known associate of the Tren De Aragua Venezuelan gang"); Pet'r Decl. ¶ 18, ECF No. 4-23 ("I am afraid that the U.S. government might think that my tattoos indicate Tren de Aragua Membership. They do not."). The Court, consistent with the Supreme Court in *A.A.R.P.*, finds that Petitioner has pointed to sufficient evidence to establish standing.[2] *See, e.g., Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1207-08 (11th Cir. 2025) (noting that constitutional injuries are concrete injuries and that a person who alleges that he is reasonably likely to suffer an imminent constitutional violation has standing to sue in federal court).

### Likelihood of Success on the Merits

In evaluating whether Petitioner has demonstrated a substantial likelihood of success on the merits of his claim, the

---

[2] Although the Supreme Court did not expressly address standing in *A.A.R.P*, it implicitly found that the petitioners had standing. With the duty to guard its subject matter jurisdiction, the Supreme Court would not have issued the order it did without satisfying itself that it had jurisdiction to do so, a conclusion that could not have been reached absent the petitioners' standing.

Court restricts its analysis to his claim that he will be denied due process if he is in fact designated an alien enemy. The Court finds it unnecessary at this point to determine whether he would likely succeed on his claim that he is not a member of TdA or whether he would otherwise not qualify as an alien enemy. Those are the issues that would be addressed during a hearing on the merits of any habeas petition after his designation as an alien enemy. The Supreme Court's decisions in *A.A.R.P.* and *J.G.G.* provide guidance on the due process issue.

In *A.A.R.P.*, the Supreme Court emphasized "that 'no person shall be' removed from the United States 'without opportunity, at some time, to be heard.'" *A.A.R.P.*, 2025 WL 1417281, at *2 (quoting *The Japanese Immigrant Case*, 189 U.S. 86, 101 (1903)). "Due process requires notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties' and that 'afford[s] a reasonable time . . . to make [an] appearance.'" *Id.* (alterations in original (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "Accordingly, in *J.G.G.*, the [Supreme Court] explained—with all nine Justices agreeing—that 'AEA detainees must receive notice . . . that they are subject to removal under the Act . . . within a reasonable time and in such a manner as will allow them to actually seek habeas relief' before removal." *Id.* (alterations in original (quoting *J.G.G.*, 145 S. Ct. at 1006). To "'actually seek habeas relief,' a detainee must have

sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief." *Id.*

Prior to the Supreme Court's ruling in *A.A.R.P.,* Respondents maintained that their self-imposed removal process for alien enemies satisfied the Supreme Court's due process concerns expressed in *J.G.G.* Those procedures include the following:[3]

1. An ICE officer serves a copy of Form AEA-21B on an alien ICE intends to remove pursuant to the AEA. Elliston Decl. ¶¶ 6-7, ECF No. 20.

2. The Form AEA-21B is in English, but it is read and explained to the alien in a language he understands. *Id.* ¶¶ 7-10.

---

[3] In support of their argument that ICE's procedures comport with the Supreme Court's due process directive, Respondents rely on the declaration of ICE Deputy Assistant Director Matthew Elliston. Respondents contend that the Elliston Declaration should be sealed and that the information in it should not be made publicly available. Respondents argue that the declaration contains "operational details" and disclosure of those details could endanger law enforcement personnel and thwart lawful removals of AEA designees who do not contest their designation. Mot. to Seal 2, ECF No. 16. The "operational details" that Respondents do not want to disclose are (1) the number of hours an AEA designee has to express an intent to file a habeas corpus petition after receiving a Form AEA-21B and (2) the number of hours an AEA designee has to file a petition for habeas corpus after expressing an intent to do so. Respondents note that if an AEA designee does not meet these deadlines, then ICE may proceed with scheduling the removal for hours or days after the deadlines expire. Respondents argue that disclosing these details could permit AEA designees to figure out when their removals might be scheduled and then coordinate a resistance to their removals. But these details have not been kept secret; Respondents disclosed these details in their unredacted, publicly available response brief (citing the Elliston Declaration), and the deadlines have been disclosed in other cases because they are central to the due process inquiry. Accordingly, the Court finds no legitimate grounds for maintaining the seal on the Elliston Declaration and hereby vacates its order temporarily sealing the Elliston Declaration (ECF No. 19).

3. The notice states:

> I am a law enforcement officer authorized to apprehend, restrain, and remove Alien Enemies. You have been determined to be at least fourteen years of age; not a citizen or lawful permanent resident of the United States; a citizen of Venezuela; and a member of Tren de Aragua. Accordingly, under the Alien Enemies Act, you have been determined to be an Alien Enemy subject to apprehension, restraint, and removal from the United States. Until you are removed from the United States, you will be detained under Title 50, United States Code, Section 21. Any statement you make now or while you are in custody may be used against you in any administrative or criminal proceeding. This is not a removal under the Immigration and Nationality Act. If you desire to make a phone call, you will be permitted to do so.

Elliston Decl. Attach. 1, Form AEA-21B.

4. The alien may ask the ICE officer questions. Elliston Decl. ¶ 12. It is unclear from the present record what additional information an ICE officer may provide to the alien beyond what is in the Form AEA-21B.

5. The notice states that an AEA designee may make a phone call, and "ICE ensures that telephones are made available for the aliens and that the aliens have access to the telephone lines. Detainees also have access to a list of legal service providers to contact if they do not already have counsel." *Id.* ¶ 13.

6. An alien is given "no less than 12 hours, including the ability to make a telephone call, to indicate or express an intent to file a habeas petition." *Id.* ¶ 14. If the alien

does not express such an intention, "then ICE may proceed with the removal." *Id.*

7. If the alien expresses an intent to file a habeas petition, he is given "no less than 24 hours" to file it.  If the alien does not file a habeas petition within 24 hours, "then ICE may proceed with the removal." *Id.*

8. In a "general case, ICE will not remove under the AEA an alien who has filed a habeas petition while that petition is pending," but ICE "may reconsider that position" in "fact-specific exceptional cases." *Id.* ¶ 18.

The Supreme Court in *A.A.R.P.* made clear that giving an AEA designee "notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster." *A.A.R.P.*, 2025 WL 1417281, at *2.  The Supreme Court, however, did not shed much light on what would "pass muster."  That job is assigned, at least initially, to those of us on the front lines.  In light of *A.A.R.P.*, the Court finds that the process outlined in Respondents' declaration does not meet the minimal due process requirements contemplated by the Supreme Court, particularly as it relates to the time within which a designated alien enemy has to file his habeas petition after being notified of the designation.  Thus, Petitioner has shown that he is substantially likely to prevail on

his claim that the current process for providing a meaningful opportunity for him to contest a future designation as an alien enemy would deny him his due process rights under the United States Constitution.

*Irreparable Harm to Petitioner*
*and Corresponding Harm to Respondents*

Petitioner will certainly be irreparably harmed if he is transferred to CECOT without having a meaningful opportunity to contest the Government's right to send him there. He may be unlawfully present in the United States. But we as a country, through our elected representatives, have determined the process for removing persons who are here unlawfully. One method is pursuant to Section 240 of the INA, which the Court understands the Government is presently pursuing. And in limited circumstances, someone can be removed in an expedited manner pursuant to the INA. *See* 8 U.S.C. § 1225 (addressing expedited removal of arriving aliens); 8 U.S.C. § 1228 (addressing expedited removal of aliens committing aggravated felonies). But as previously explained, our foundational governing document, the Constitution, requires that the Government, which includes all branches, shall provide someone with an opportunity to meaningfully contest the deprivation of their liberty. Failing to do so results in irreparable harm to the one denied such constitutional protections. Requiring the Government (here the

Respondents) to merely comply with the Constitution imposes no undue burden. Thus, the balance of harm favors granting the preliminary injunctive relief.

<u>*The Public Interest*</u>

It certainly serves the public interest to assure that the Government does not infringe upon someone's fundamental constitutional rights. But it cannot be reasonably disputed that the President, having been elected by the people, should be afforded substantial deference in the execution of his duties under Article II of the Constitution. One of those duties, for which Congress has provided broad discretion, is the obligation to implement the country's immigration policy. Thus, interference with the Executive Branch's performance of these immigration related duties must be limited. Unnecessary interference with these Executive duties is against the public interest.

Because of this necessary restraint, the Court narrowly tailors its injunctive relief as follows. The Court orders that Respondents shall not remove Petitioner from the United States as an alien enemy until (1) Respondents submit to the Court a proposed revised alien enemy removal process as applied to Petitioner that is consistent with the Supreme Court's opinion in *A.A.R.P.* and (2) this Court has entered an order specifically setting forth the due process requirements necessary to protect Petitioner's constitutional rights in light of the most recent Supreme Court

opinions. The Court emphasizes that it is not ordering Respondents to rewrite the process for removing alien enemies nationwide. Instead, it is giving Respondents the opportunity to provide the Court with a proposed revision to its existing policy before the Court makes necessary revisions to that policy to protect Petitioner's constitutional right to meaningfully contest his removal as an alien enemy. After receiving Respondents' proposal, the Court intends to enter an order that will amend this preliminary injunction to include specific minimal due process requirements to be followed prior to the removal of Petitioner as an alien enemy. The Court finds this approach to be the least intrusive available encroachment into the Executive Branch's broad discretion while assuring that Petitioner's important due process rights are protected.

Respondents undoubtedly would prefer that they be allowed to implement any necessary changes to their AEA procedures without judicial oversight. Allowing constitutional rights to be dependent upon the grace of the Executive branch would be a dereliction of duty by this third and independent branch of Government and would be against the public interest. Respondents have demonstrated their intention to test the constitutional limits of Executive power, which is certainly their right; but the Court has the responsibility to assure that unrestrained zeal does not include gaming the system in a manner that deprives an

individual of constitutional protections that were established by our wise founders and preserved by subsequent brave patriots.

The public interest, while not always vocalized the loudest, requires that we remember that that these constitutional protections do not exist only for those attending lunch at the local Rotary Club, enjoying war stories at the VFW hall or having a beer at the Moose Club lodge. These rights are not rationed based upon political views, and they do not belong solely to those who may be subjectively determined to be great Americans. They extend to those whom many may consider to be the most repugnant among us. This foundational principle is part of what has made, and will continue to make, America great. Consistent with the rule of law, it is the Court's job to make sure, without fear or favor, that we adhere to these principles. Doing so certainly serves the public interest.

CONCLUSION

Having carried his burden for preliminary injunctive relief, Petitioner's motion (ECF No. 4) is granted as follows: Respondents shall not remove Petitioner from the United States as an alien enemy until (1) Respondents submit to the Court a proposed revised alien enemy removal process as applied to Petitioner that is consistent with the Supreme Court opinion in *A.A.R.P.* and (2) this Court has entered an order specifically setting forth the due process requirements necessary to protect Petitioner's

constitutional rights in light of the most recent Supreme Court opinions.[4]

      IT IS SO ORDERED, this 21st day of May, 2025.

                                       S/Clay D. Land
                                       CLAY D. LAND
                                       U.S. DISTRICT COURT JUDGE
                                       MIDDLE DISTRICT OF GEORGIA

---

[4] Today's order only addresses the removal of Petitioner as an alien enemy pursuant to the Alien Enemies Act. It does not restrict the Government from removing Petitioner under other lawful authorities, including the transfer from Stewart to effect his removal under the INA.